Entered: November 12th, 2021
Signed: November 12th, 2021

**SO ORDERED**



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

| | |
|---|---|
| In re: | |
| JILL K. GODEN, | CASE NO. 14-22934-NVA |
| Debtor. | CHAPTER 7 |

### MEMORANDUM ORDER DISMISSING CHAPTER 7 BANKRUPTCY CASE UPON CONSIDERATION OF ORDER TO SHOW CAUSE AND RESPONSES THERETO

The issue before the Court is whether to dismiss this bankruptcy case because it is not serving a proper bankruptcy purpose. The Court has authority to dismiss cases that abuse the bankruptcy process and a duty to uphold the integrity of the bankruptcy system.

The Court has become concerned for many reasons explored in this ruling. For one, this case has become little more than a battleground for the debtor, Jill Goden, and her long-time adversary, Luis Rullan, to play out their hostilities in connection with a dispute that is the subject of proper litigation in another forum. The use of a bankruptcy court to engage in what essentially is a "two-party dispute" is often the hallmark of a case being used improperly. Also, this case has really only a single unsecured creditor – the debtor's litigation adversary – who holds over 99% of the claims filed in this case. This underscores that few, if any, others are being served by keeping this bankruptcy case open.

Over the course of time, the Court's concern has increased to the point where, in July 2021, the Court suspended its action on other then-pending disputed motions[1] (which could be mooted by dismissal) and entered an order asking parties to show cause why the case should not be dismissed of the case, and why dismissal is not in the best interest of the estate. The parties filed their responses in August 2021, and their responses, together with the entire record in the case, are considered here. The Court concludes that this case does not serve a legitimate bankruptcy purpose and should be dismissed.

The record in this case leading to the Court's decision is set out in substantial detail herein. This fairly exhaustive review of the procedural history and filings in this case demonstrates that:

- This has been, from the inception of this bankruptcy in 2014, dominated almost exclusively by a battle between just two parties – who are already involved in litigation that has been pending since 2012 in the United States District Court to resolve the very dispute about which they have been wrangling in the Bankruptcy Court.

- Luis Rullan is the plaintiff in two District Court actions, and has filed a claim against the debtor in this bankruptcy case.

- Mr. Rullan's claim comprises over 99% of the unsecured claims in the bankruptcy case. It is undisputed that resolution of this bankruptcy case is dependent upon resolution of his claims in the District Court actions.

- Neither adversary is without fault in the mis-use of the bankruptcy case.

- Ms. Goden commenced this bankruptcy case on the eve of her deposition in the District Court litigation, apparently to avoid that deposition. It appears to this Court to be doubtful that Ms. Goden had a legitimate bankruptcy purpose (reorganization or otherwise) for filing this case, inasmuch as her only other unsecured creditors have de minimis claims (*e.g.*, Nordstrom) totaling less than 1% of the filed claims.

- Ms. Goden has not complied with all obligations in this case, including an order of the Court relating to the disposition of rents received from her property.

---

[1] Almost every motion filed in this case is opposed and disputed, including an array of requests filed by the Trustee in March, May, and August of 2021, which have been opposed and would need to be heard if they were not mooted by this ruling.

- Mr. Rullan seized upon the bankruptcy case as a means to pursue his litigation goals. He admits that as time went on, admits that he began to utilizing the bankruptcy case as a discovery device for the District Court litigation.

The Court believes that dismissal of this case will not adversely affect creditors and parties-in-interest.

- Upon dismissal, the few secured creditors will be able to exercise their bargained-for contractual and state law rights and remedies, including foreclosure, without being hampered by the automatic stay.

- Unsecured creditors may also pursue their contractual and state law rights and remedies.

- Mr. Rullan, who does not yet have an enforceable claim against Ms. Goden, may continue to litigate his claims currently pending before the United States District Court, seek discovery in connection with that litigation, and, if a judgment is obtained, he may execute upon the judgment, seek post-judgment discovery, and otherwise exercise the full panoply of rights and remedies available to a judgment creditor, all without being hampered by the automatic stay or being compelled to litigate in multiple forums.

- Ms. Goden now supports dismissal of her bankruptcy case.

## JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## THE PLEADINGS PERTINENT TO DISMISSAL AND THE OSC

This  matter is before the Court pursuant to 1) the Order to Show Cause Why Case Should Not Be Dismissed and Whether Dismissal Is In the Best Interests of the Estate/Creditors (the "OSC") entered by the Court, 2) Rullan's Post-June 21, 2021 Status Conference Memorandum Addressing Lack of Two-Party Dispute (the "Rullan Memorandum"),[2] 3) the Trustee's response to the OSC (the "Trustee's Response"), 4) Mr. Rullan's response to the OSC ("Rullan's

---

[2] In response to comments made by the Court at a status conference held on June 21, 2021, Mr. Luis (Janer) Rullan pre-emptively filed the Rullan Memorandum.  The Court considered the Rullan Memorandum prior to issuing the OSC, but also has considered it again in connection with this ruling.

Response"), and 5) Ms. Goden's response (the "Debtor's Response").  [ECF Nos. 431, 427, 434, 436, and 437, respectively].  The Court has also carefully reviewed the transcripts of the Status Conferences held on January 14, 2021 and June 21, 2021 (collectively, the "Status Conferences"), at which time the parties made statements and arguments pertinent to dismissal, as well as the full record of this bankruptcy case.  The Court dispenses with a hearing because the facts and legal conclusions are adequately presented in the materials submitted by the parties and the record before the Court.[3]

## FACTS AND PROCEDURAL BACKGROUND

There is a long and litigious history between Ms. Goden (the "Debtor") and Mr. Rullan. As is often the case when deep, long-standing relationships sour, the dispute between the parties has spawned litigation among a variety of state and federal courts and the use of scorched-earth tactics by both parties, with this Court being one of the most recent battlefields.  To date, there have been at least seven cases filed as a result of their dispute, including two actions pending in the United States District Court for the District of Maryland, two dissolution actions filed in Maryland state court, a lawsuit pending in Florida state court, and two bankruptcy cases.  The multiplicity of actions has hindered ultimate resolution of the dispute, which is now in its tenth year of litigation, with little discernable progress having been made.

Ms. Goden and her father (Fred Greenberg) owned companies that owned and operated a summer camp located in the Shenandoah Mountains, in High View, West Virginia (the "Summer

---

[3] The Court also notes that status conferences have been held in this case, at which the parties offered arguments addressing the issues raised in the OSC.  [ECF Nos. 396, 433].

Camp").[4] See Proof of Claim 6-1 (the "Proof of Claim"), Ex. 2, Amended Complaint at ¶¶ 1-17.[5] Mr. Rullan and his four siblings attended the Summer Camp as campers and counselors for a period that totaled approximately twenty years. *Id.* at ¶ 18. Throughout this time, Mr. Rullan, Ms. Goden, and their respective families became "very close friends." *Id.* at ¶ 19. According to Mr. Rullan, in November 2010, Ms. Goden and Mr. Greenberg proposed that Mr. Rullan become a partner with Ms. Goden to assist her in managing the Summer Camp and recruiting campers from Europe. *Id.* at ¶ 21. Mr. Rullan asserts that the parties entered into an oral employment agreement governing the terms of his employment, a written partnership agreement, and a written securities purchase agreement – all relating to the Summer Camp. *Id.* at ¶ 1.

Less than a year after the Partnership Agreement[6] between the parties was executed, the litigation commenced. On or about August 14, 2012, Mr. Rullan filed a complaint in the United States District Court for the District of Maryland (the "District Court"), case number 1:12-cv-02412 (the "2012 Litigation"), naming Ms. Goden, Mr. Greenberg, and the various Summer Camp Entities as defendants. On November 5, 2013, Mr. Rullan filed the Amended Complaint in the 2012 Litigation. *See* Proof of Claim, Ex. 2. In the 2012 Litigation, Mr. Rullan asserted claims against Ms. Goden for (i) breach of contract relating to: (a) breach of an oral employment agreement, (b) breach of a written securities agreement, (c) breach of a written partnership agreement; (ii) negligence; (iii) breach of fiduciary duty; (iv) quantum meruit/unjust enrichment;

---

[4] The Summer Camp land was owned by Timber Ridge, Inc. ("TRI"); the Summer Camp operations were managed by Youth World, Ltd. ("YWL"), and Youth World International Company, Ltd. ("YWI") was purportedly formed to handle the Summer Camp's "international endeavors." *See* Sanctions Motion (defined below) at ¶¶ 2-3. TRI, YWL, and YWI are collectively referred to herein as the "Summer Camp Entities."

[5] The recitations of the allegations of the Amended Complaint contained in this paragraph do not constitute findings of fact by this Court. The "Amended Complaint" is the Amended Complaint filed in *Rullan v. Goden*, Case No. 1:12-cv-02412, filed in the United States District Court for the District of Maryland .

[6] The "Partnership Agreement" is the Partnership agreement August 24th, 2011 – Timber Ridge Camp, HV, WVA attached to the Rullan Proof of Claim as Exhibit 1.

(v) financial accounting; (vi) conversion of property and invasion of property; (vii) fraud and fraudulent inducement; and, (viii) shareholder oppression. *See* Amended Complaint. The 2012 Litigation remains pending before the District Court.

Apparently, by mid-2014, the 2012 Litigation was in the discovery stage, and Ms. Goden was about to be deposed. On August 14, 2014, approximately two days before her scheduled deposition, Ms. Goden commenced this case (the "Bankruptcy Case") by filing a voluntary petition under chapter 13 of 11 U.S.C. § 101 *et. seq.* (the "Bankruptcy Code"). [ECF No. 1].[7] On August 18, 2014, Ms. Goden filed two dissolution actions in the Baltimore County Circuit Case, Case Nos. 03-C-1400892 (relating to YWL) and 03-C-14008891 (relating to YWI).

Shortly after the Bankruptcy Case was commenced, Mr. Rullan filed an adversary complaint within the Bankruptcy Case in which he alleged that Ms. Goden should be denied a discharge, that his claims are non-dischargeable, and that fraudulent conveyances were made under state law related to the assets of the Summer Camp Entities (the "Adversary Proceeding"). *See* Adv. P. 14-000881, [AP ECF No. 1].[8] In 2017, Mr. Rullan decided that the fraudulent conveyance claim should be heard in the District Court. On October 11, 2017, Mr. Rullan moved for withdrawal of reference of the fraudulent conveyance counts of Bankruptcy Complaint to the District Court (the "Withdrawal Motion"). [AP ECF No. 29]. Mr. Rullan alleged that withdrawal of the reference was appropriate because:

> fraudulent transfer claims cannot be adjudicated by the Bankruptcy Court, these claims are brought under state law and do not implicate the uniformity of bankruptcy administration, this motion is not an attempt to forum shop, the District Court is already familiar with the circumstances surrounding these claims and is best-positioned to hear them, and Rullan seeks a jury trial.

---

[7] On September 18, 2014, Ms. Goden voluntarily converted her case to one under Chapter 7 of the Bankruptcy Code and a Chapter 7 trustee (the "Trustee") was appointed. [ECF No. 19].

[8] References to the docket in the Adversary Proceeding shall be cited as "AP ECF No. __."

Withdrawal Motion at 5. The Withdrawal Motion was granted, and the fraudulent conveyance claims were severed from Mr. Rullan's Adversary Proceeding and moved to the District Court (the "Fraudulent Conveyance Action"). [9] The Fraudulent Conveyance Action has been pending before the District Court since 2017.

It is not disputed that Mr. Rullan's claim comprises more than 99% of the unsecured claims filed against Ms. Goden in the Bankruptcy Case. Mr. Rullan filed his Proof of Claim in the Bankruptcy Case for $5,909,162.00. *See* Proof of Claim 6-1. All other claims filed in this case total less than $30,000. It is not disputed that his ability to prove his claim and recover is contingent upon entry of judgment in his favor in the actions pending before the District Court. It appears that the parties have not taken meaningful steps to advance the 2012 Litigation since December 2018, nor to advance the Fraudulent Conveyance Litigation since October 2019. What Mr. Rullan has admittedly done, as discussed later, is attempt to use the Bankruptcy Case as a means to take discovery for use in his District Court litigation.

On September 17, 2014, Mr. Rullan filed a Motion for Relief from Stay, seeking relief from the automatic stay that protected Ms. Goden in bankruptcy, to permit Mr. Rullan to prosecute the 2012 Litigation (the "Stay Relief Motion"). [ECF No. 13].[10] According to Mr. Rullan, the 2012 Litigation "consists entirely of state-law causes of action," "not rights conferred or obligations imposed by the Bankruptcy Code." *See* Stay Relief Motion at ¶ 25. In support of his Stay Relief Motion, Mr. Rullan stated not only that it would be more economical for the parties, and judicial economy would be better served if stay relief was granted and the 2012 Litigation was

---

[9] Case No. 1:17-03741-CCB pending before the District Court. The only claims remaining in the Adversary Proceeding are Mr. Rullan's request for denial of discharge/dischargeability.

[10] Mr. Rullan filed an emergency motion to shorten time to respond to the Stay Relief Motion, stating that it was necessary as a result of the September 30, 2014 discovery cut-off set in the 2012 Litigation. [ECF No. 15]. The Court granted the request and shortened the time to respond to the Stay Relief Motion. [ECF No. 29].

allowed to proceed in the District Court, but also that **he would suffer significant prejudice** if forced to pursue his claims against Ms. Goden in the bankruptcy court, rather than continue the litigation in the District Court, where it had been pending for two years and where the District Court was, as Mr. Rullan said, "much more familiar with the non-bankruptcy issues." *Id.* at ¶ 24-27. It was here that Mr. Rullan himself noted that he would not be entitled to any recovery in the Bankruptcy Case until after an award (if any) was issued by the District Court. *See id.* at ¶ 30. On November 17, 2014, this Court entered the consent order agreed upon by the parties, that provided for the modification of the automatic stay to allow Mr. Rullan to continue to prosecute the 2012 Litigation to judgment in District Court and to take any appeals therefrom. *See* Stipulation and Consent Order (the "Consent Order"), [ECF No. 50].

While the Stay Relief Motion was pending, and four days before the Consent Order was entered, Mr. Rullan filed a motion to allow him to conduct examinations (essentially depositions) under Bankruptcy Rule 2004 (the "2004 Motion") of an employee of YWL, three accountants that provided services to certain of the Summer Camp Entities, Ms. Goden's husband, and a secured lender of a loan given to TRI and Ms. Goden's parents. [ECF No. 49]. In the 2004 Motion, Mr. Rullan sought extensive discovery of the non-debtor parties regarding matters relating to the 2012 Litigation, potential causes of action that **the bankruptcy estate** may possess, and information relevant to Mr. Rullan's intended purchase of the bankruptcy estate's interest in assets relating to the Summer Camp Entities. *See* 2004 Motion at 4.

Meanwhile, on November 20, 2014, the Trustee filed a notice of his intent to sell ("Motion to Sell") the estate's interest in the Summer Camp Entities, as well as in certain then-pending dissolution lawsuits relating to such entities, and any claims relating to the Summer Camp Entities, to **Mr. Greenberg**. [ECF No. 54]. Seeking to purchase these assets himself, Mr. Rullan filed

multiple objections to the Trustee's Motion to Sell,[11] and served subpoenas upon Ms. Goden, Mr. Greenberg, Mr. Greenberg's Counsel, the Trustee, and the Trustee's counsel relating to the Trustee's Motion to Sell.  [ECF Nos. 56, 57, and 73].

On December 22, 2014, Ms. Goden moved to dismiss her bankruptcy case with prejudice for 180 days (the "Motion to Dismiss").  [ECF No. 69].  Significantly, Ms. Goden sought to impose upon herself a six month bar to re-filing another bankruptcy case, presumably to ward off objections that she would become a repeat filer in short order.  On December 24, 2014, Ms. Goden filed a Motion to Stay Third Party Discovery ("Motion to Stay Discovery") pending the Court's consideration of the Motion to Dismiss, as well as the Motion to Sell.  [ECF No. 75].  The Motion to Stay Discovery was granted.[12]  [ECF No. 77].

On March 17, 2015, Ms. Goden filed a Motion to Suspend All Proceedings (the "Motion to Suspend") pending resolution of the 2012 Litigation.  [ECF No. 113].  Among other things, she noted that Mr. Rullan had filed a claim in the amount of $5,909,162 based upon the claims asserted in the 2012 Litigation.  *See* Motion to Suspend at ¶ 7.  The remaining claims filed in the case total less than $30,000.  *See id.* at ¶ 8.  Of this $30,000 amount, the IRS asserted a priority tax claim of $25,000 that is non-dischargeable.  *See id.* at ¶ 9.  Because everyone, including Mr. Rullan, understood that determination of the Rullan claim amount hinges upon the District Court's determination of whether Mr. Rullan has any claim against Ms. Goden, and if so, the nature and amount of such claim, Ms. Goden argued that suspension of the Bankruptcy Case was in the best interests of the creditors and the Court.  *See id.* The Court granted the motion and entered an order

---

[11] [ECF Nos. 64 and 66].

[12] On March 13, 2015, while third party discovery was stayed, Mr. Rullan served a subpoena upon Mr. Nesson, as well as additional discovery requests upon Ms. Goden.  [ECF Nos. 109-111].

suspending all proceedings until the earlier of (i) entry of final judgment in the 2012 Litigation or (ii) dismissal of the 2012 Litigation (the "Suspension Order"). [ECF No. 117].

The Court has modified the Suspension Order several times when requested (i) to allow Ms. Goden to file a pleading to obtain Court approval to rent two properties owned by her and her husband as tenants by the entireties; (ii) to allow the Trustee to administer the bankruptcy case and liquidate assets; and (iii) to allow Mr. Rullan to file and prosecute the Sanctions Motion (defined below). [ECF Nos. 155, 230, 259].

### The Trustee's No Asset Report, Report of No Distribution, and Withdrawal Thereof

After a period of inactivity, on March 24, 2019, the Trustee filed the Trustee's "*Ad Hoc*" Report of No Distribution ("No Asset Report") and the Trustee's Report of No Distribution (the "Report of No Distribution"). [ECF No. 237]. These reports signal to parties and the Court that a trustee has finished his investigation into a bankruptcy case and has concluded that he has found no assets to liquidate and nothing to distribute. Ordinarily, the filing of these reports by a trustee leads to the ministerial act of closing the bankruptcy case, except where, as here, an adversary proceeding remains open. There were no other reasons why the Bankruptcy Case remained open.

On October 17, 2019, the Trustee withdrew the No Asset Report, stating only "Please withdraw the Trustee's no asset report (Paper 237) previously filed." [ECF No. 240]. There were no additional filings by the Trustee until three months later, when the Trustee withdrew (the "Withdrawal") his Report of No Distribution, stating that "evidence of possible concealed assets and conveyances to an insider having been presented to the Trustee." [ECF No. 283]. The Court scheduled a hearing requesting that the Trustee appear and advise the Court of, among other things, the evidence, assets, and conveyances referenced in the Withdrawal, the status of his

investigations, and the length of time the Trustee required to complete his investigation.  [ECF No. 292].

The Trustee filed a response (the "Withdrawal Response") in which he stated, among other things, that he had been provided with a copy of an appraisal dated December 13, 2012 addressed solely to Ms. Goden that listed various articles of jewelry with an appraised value of $143,400. [ECF No. 304].  In a letter to the Trustee, Debtor's counsel stated that the jewelry was inherited by Mr. Greenberg when Ms. Goden's mother passed in April 2012, without a will, and the jewelry was divided by Mr. Greenberg among his daughters and granddaughters.  *See* Withdrawal Response at ¶ 4.  The Trustee found this explanation lacked "verisimilitude" because, among other things, (i) Ms. Goden's mother left a will that was duly probated and that stated that tangible personal property was designated in a separate statement or list; (ii) the Order of Summary Administration entered by the probate court did not identify any jewelry left to Mr. Greenberg; and (iii) a post litam statement of Jodi Goden stating that she was given a Cartier watch did not specify a date or provide a receipt.  *See id.*  Debtor's counsel also provided a list of other jewelry purportedly sold by Ms. Goden in 2013, but no evidence of the sales was provided.  *See id.* at ¶ 5. In addition, Debtor's counsel also acknowledged transfers from a Timber Ridge account controlled by Ms. Goden to her husband's insurance business totaling $168,000 within one year of Ms. Goden's bankruptcy filing.  *See id.* at ¶ 6.  None of the foregoing was disclosed, as required, on Ms. Goden's Statement of Financial Affairs or Schedules of Assets and Liabilities.  In addition, Ms. Goden rented property without authority, and without providing an accounting for rents received.  *See id.* at ¶ 7. Ms. Goden also failed to provide requested tax returns to the Trustee.  *See id.* at ¶ 8.

**Rullan's Motion for Sanctions**

On December 31, 2019, Mr. Rullan filed a Motion for Sanctions (the "Sanctions Motion") seeking an award of sanctions and alleging that Ms. Goden had filed bankruptcy in bad faith, concealed assets, perjured herself before the Bankruptcy Court, made fraudulent conveyance of assets, and abused the judicial system as part of a concerted effort to prevent Mr. Rullan from obtaining and collecting upon a judgment to be issued in the 2012 Litigation. [ECF No. 259]. As sanctions, Mr. Rullan asked the Court to deny Ms. Goden a bankruptcy discharge, grant an injunction against further bankruptcy filings, and award attorneys' fees incurred by Mr. Rullan in the Bankruptcy Case. On March 18, 2020, four days after courtwide extension and stay orders were issued in response to the Covid-19 pandemic, Mr. Rullan filed a motion to modify the Suspension Order to allow prosecution of the Sanctions Motion (the "Modification Motion").[13] [ECF No. 296].

On May 5, 2020, Mr. Rullan filed a Motion for Exception from Standing Order 2020-07 to Prosecute (1) Motion for Sanctions and (2) Motion to Modify Order Suspending All Proceedings in the Chapter 7 Case at June 11, 2020 Hearing (the "Exception Motion"). [ECF No. 307]. On May 15, 2020, the Court entered a Memorandum Order in which the Court set a hearing on the Withdrawal Response and the Modification Motion for July 9-10, 2020. [ECF No. 309]. The Court denied Mr. Rullan's Exception Motion and corresponding motion to shorten time as moot, because the rescheduled hearing dates fell outside of the time period affected by the Standing

---

[13] On March 14, 2020, the District Court issued the Second Amended Standing Order 2020-03, in response to the state of emergency declared by the Governor of the State of Maryland in response to the COVID-19 pandemic. Pursuant to this Standing Order, among other things, all bankruptcy proceedings scheduled to occur between March 16-27, 2020 were postponed, to be rescheduled at a later date, and all filing deadlines set to fall between March 20-27, 2020 were extended by 14 days. On March 20, 2020, the District Court issued Standing Order 2020-05 postponing all proceedings scheduled to commence through April 24, 2020, and extending all filing deadlines set to fall between March 16, 2020 through April 24, 2020 for 42 days. On April 10, 2020, the District Court issued Standing Order 2020-07 postponing all proceedings scheduled to commence through June 5, 2020 and extending all filing deadlines originally scheduled to fall between March 16, 2020 through June 5, 2020 for 84 days.

Order 2020-07.  On July 7, 2020, noting that there was no timely opposition and good grounds were stated for the modification, the Court entered an order modifying the Suspension Order to allow Mr. Rullan to prosecute the Motion for Sanctions.  [ECF No. 315].[14]

Ms. Goden opposed the Sanctions Motion on July 21, 2020. [ECF Nos. 321].   On September 8, 2020 Mr. Rullan filed notices of subpoenas served upon Real Estate Valuation Consultants t/a ReMax Premier Associates and Maryland Short Sales, LLC.  [ECF Nos. 334, 335]. On September 11, 2020, Mr. Rullan filed a motion to continue the scheduled hearing on the Sanctions Motion to allow Mr. Rullan to complete discovery, in light of Ms. Goden's purported obstruction of discovery, which was granted by the Court.  [ECF Nos. 337, 348].  In the order, the Court set an informal status conference for September 24, 2020.

On September 14, 2020, Mr. Rullan filed notices of service of subpoenas upon BB&T Corporation n/k/a Truist Bank; Bank of America, N.A.; Citibank, NA; and Wells Fargo Bank, N.A., Mr. Greenberg, and the Frederick Greenberg Revocable Trust.  [ECF Nos. 340-42].  On September 18, 2020, Mr. Rullan filed a notice of service of subpoenas upon BB&T Corporation n/k/a Truist Bank; Bank of America, N.A.; Citibank, N.A.; Wells Fargo N.A.; JP Morgan Chase Bank, N.A.; M&T Bank; PNC Bank; Credibly; Libertas Funding LLC; and Frederick I. Greenberg. [ECF No. 344].

At the informal status conference held on September 24, 2020, the parties agreed to certain deadlines with respect to the Sanctions Motion, which deadlines were memorialized in a scheduling order entered on September 28, 2020.  [ECF No. 359].  All fact discovery was to be concluded by November 13, 2020, discovery motions were to be filed by December 4, 2020,

---

[14] The Court also entered a memorandum order terminating the hearing scheduled for July 9-10, 2020, finding that the Withdrawal Response adequately addressed the Court's questions at that time, and directing the Trustee to file a status report by August 31, 2020 that described the status of any pending issues identified in the Withdrawal Response and any outstanding discovery.  [ECF No. 316].

witness and exhibit lists were to be filed by January 6, 2021, and the hearing on the Sanctions Motion was to be held on January 8, 2021.  [ECF No. 359].

On October  20, 2021, Mr. Rullan filed a notice of service of subpoenas to First Clearing, LLC; Lakeside Title Company; Glass Jacobson, P.A.; Paul Cummings, Esq.; and Northern Trust Company.  [ECF No. 369].  On November 12, 2021, Mr. Rullan filed a notice of service of subpoenas to Eric Goden and Jonathan Marc Davidoff, Esq.  [ECF No. 370].  On November 12, 2020, Mr. Rullan filed a motion seeking to extend the time for fact discovery for an additional two months, citing Ms. Goden's purported failure to comply with discovery relating to financial records and other information of the Summer Camp Entities that Mr. Rullan believed was within her possession, custody, or control.  [ECF No. 371].  Mr. Rullan also filed motions to compel Ms. Goden, Mr. Greenberg, Mr. Goden to produce documents responsive to his discovery requests. [ECF Nos. 377, 378, 383].

A case conference was held on a number of the pending papers on January 14, 2021.  The Court issued an order setting a schedule for additional briefing by the parties, staying the motion for sanctions, related discovery, and the related motions to compel pending further order of the Court, and setting a status conference for February 25, 2021.  [ECF No. 393].  The Court held a number of additional status conferences on the Sanctions Motion and related matters,[15] and the Court ultimately entered a Memorandum Order Denying Motion for Sanctions.  [ECF No. 445].

### The Parties' Reports on the Status of the District Court Litigation

At the Status Conferences held in January and June 2021, the Court, among other things, attempted to obtain information from the parties regarding the status of the 2012 Litigation, the status of discovery, how the Trustee intended to proceed with his administration of the case, the

---

[15] [ECF Nos. 403, 404, 414, and 430].

Fraudulent Conveyance Litigation, and the Adversary Proceeding.[16]  The parties were unable to give a clear explanation of the status of the 2012 Litigation or the Fraudulent Conveyance Litigation.

At the January 2021 Status Conference, the Court also raised the issue of whether dismissal of the case was appropriate, given that the Bankruptcy Case appeared to largely consist of a two-party dispute between Mr. Rullan and Ms. Goden that was the subject of the pending litigation before the District Court, and there did not appear to be a legitimate bankruptcy purpose.  *See* January Transcr. at 7:10-8; 12:4-13:10; 30:14-39:25; 53:8-15; 56:10-57:8.

The Trustee did not attend the January 2021 Status Conference, so the Court did not receive information regarding the status of his administration of the case or how he intended to proceed. The Court and parties noted that the last item filed or submitted by the Trustee was a line status report filed over four months earlier, on August 31, 2020, in response to the Court's instruction, stating that the Trustee had requested financial information from Ms. Goden's counsel and was awaiting receipt of such information.  [ECF No. 33].  Debtor's counsel stated that he had provided the requested information.  January Transcr. at 15:11-17:25.

At the June 2021 Status Conference, the parties were again unable to provide an explanation of the status of the 2012 Litigation and the Fraudulent Conveyance Litigation.  Mr. Rullan's counsel stated that it was not clear whether those actions were stayed by the District Court Judge and Magistrate Judge, respectively, and that he was not sure what was going on in the 2012 Litigation, which has been pending for almost ten years.  *See* Transcript of June 21, 2021 Status Conference (the "June Transcr.") at 6:3-14; 8:16-23.  [ECF No. 433].  According to counsel for the parties, the parties met with the District Court Judge approximately a year and a half ago and

---

[16] *See* Transcript of January 14, 2021 Status Conference (the "January Transcr.") at 6:1-7:9.  [ECF No. 396].

agreed that they would conduct discovery to determine whether the defendants had any assets available for recovery before proceeding with the 2012 Litigation. *See* June Transcr. at 7:4-13; 9:2-18.

Notably, Mr. Rullan's counsel acknowledged that they were using the Bankruptcy Case to conduct that discovery. June Transcr. at 7:13-18; 10:17-11:8. According to Mr. Rullan's counsel:

> From our perspective, given that this Court was proceeding and permitting discovery of assets, we were pursuing that question which was relevant to the District Court proceeding before this Court in the Bankruptcy proceeding, rather than doing dual track with respect to subpoenas and motions and things like that. So we were concentrating our efforts before this Bankruptcy Court, in hopes of being able to use the information that we uncover in the District Court.

June Transcr. at 12:14-22. Ms. Goden's counsel was under the impression that the District Court Judge was prepared to schedule the trial in the 2012 Litigation. *See id.* at 16:11-16. The Court again raised the issue of whether the Bankruptcy Case should be dismissed, and noted that the Court was increasingly concerned that the Bankruptcy Court was being used improperly. June Transcr. at 26:15-27:6.

### Issuance of the OSC

After careful consideration and review of the proceedings, the Court issued the OSC, stating its concerns regarding whether this Bankruptcy Case continued to serve an appropriate purpose and whether the best interests of the estate and creditors would be better served by dismissal. *See* OSC at p. 1. The Court noted that approximately seven creditors had filed claims totaling $5,948,128.68, including Mr. Rullan's claim of $5,909,162. The remaining claims include a $25,000 priority tax claim of the IRS that is not subject to discharge, leaving a *de minimis* amount of remaining unsecured claims.[17] Although the Court invited all creditors and parties in interest

---

[17] It is conceivable that the few secured creditors may assert deficiency claims, if the creditors liquidate their collateral and there is a deficiency remaining. The Court notes that two secured creditors filed motions for relief from the

to respond to the OSC, responses were only filed by Mr. Rullan, the Trustee, and Ms. Goden. [ECF Nos. 427, 436, 434, 437].

## ANALYSIS

### The Bankruptcy Court Has the Power to Dismiss a Case, *Sua Sponte*

Section 707(a) of the Bankruptcy Code provides that the Court may dismiss a bankruptcy case for cause.  Section 105(a) states that the Court:

> may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of any issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105.  Bankruptcy Courts are empowered to dismiss a chapter 7 case, for cause, *sua sponte*.  *See G.L.A.D. Enters., LLC v. Deutsche Bank National Trust Company, as Indenture Trustee for Am. Home Mortgage Invest. Trust 2006-1 (In re G.L.A.D. Enters., LLC)*, Adv. Pro. 19-05018 2019 WL 5586962 (Bankr. D. Del. Oct. 28, 2019) *slip op.* (dismissing a voluntary chapter 7 case *sua sponte* under the power given to the court pursuant to Sections 105(a) and 707(a) where the case was filed solely to forestall a pending foreclosure action); *In re Jakovljevic-Ostojic*, 517 B.R. 119, 126 (Bankr. N.D. Ill. 2014) (dismissing a voluntary chapter 7 case for cause, and noting that the Court had the authority to raise the issue *sua sponte* pursuant to Section 105(a) and citing cases); *In re Sekendur*, 334 B.R. 609, (Bankr. N.D. Ill. 2005) (noting that the bankruptcy case was properly dismissed both on the court's own motion, as well as the motion of a creditor under Section 707(a)); *see also In re Rubenstein*, 71 B.R. 777, 778 (9th Cir. B.A.P. 1987) (finding that

---

automatic stay, that were denied because proceedings were suspended, and the creditors had not first sought modification of the Suspension Order to allow the motions to go forward.  [ECF Nos. 243, 254, 269, 284].  The automatic stay will terminate upon the dismissal of the Bankruptcy Case.  If the Court had not determined that dismissal was appropriate at this time, the Court would be inclined to modify the Suspension Order to allow motions for relief from the automatic stay to go forward.

the 1986 amendments to Section 105(a) evidenced Congress's "intent not to exclude the court from acting when a provision [of the Bankruptcy Code] calls for action by a 'party in interest'" such that a bankruptcy court has the ability to dismiss or convert a case *sua sponte*);[18] *In re Bayou Self, Inc.*, 73 B.R. 682, 683 (Bankr. W.D. La. 1987) (holding that a bankruptcy court always had the power to dismiss or convert a case *sua sponte*, notwithstanding the 1986 amendments to the Bankruptcy Code).

### Cause Exists to Dismiss the Bankruptcy Case

Section 707(a) provides that a chapter 7 bankruptcy case may be dismissed for cause, including (i) "unreasonable delay by the debtor that is prejudicial to creditors"; (ii) nonpayment of certain fees and charges; and (iii) failure by the debtor to timely file certain required information, but only on the motion of a chapter 7 trustee. The enumerated examples are illustrative, not exhaustive. *See G.L.A.D.*, 2018 WL 5586962 *3; *Jakovljevic-Ostojic*, 517 B.R. at 126; *In re Wilson*, 2016 WL 1254637 *4, Bankr. Case No. 12-32715-WIL (Bankr. D. Md. March 30, 2016) *unreported*; *In re McCullough*, 229 B.R. 374, 376 (Bankr. E.D. Va. 1999). The lack of a legitimate bankruptcy purpose is grounds for dismissal. *See Associacion de Titulares de Condominio Castillo*, 581 B.R. 346, 357-58 (1st Cir. B.A.P. 2018) (stating that "[a]nother such cause for dismissal under § 707(a) is lack of a legitimate bankruptcy purpose," and citing cases); *In re Holmes*, 2021 WL 3834168 *2, -- B.R. – (Bankr. D.S.C. Aug. 3, 2021) (dismissing debtor's chapter 7 bankruptcy case where there was no bankruptcy purpose likely to be served); *see also Wilk Auslander LLP v. Murray (In re Murray)*, 900 F.3d 53, 57 (2nd Cir. 2018) (dismissing an involuntary bankruptcy case where it was "an improper use of the bankruptcy system"); *Kelley v.*

---

[18] In *Rubenstein*, the Bankruptcy Appellate Panel reversed the bankruptcy court's *sua sponte* conversion of the debtor's Chapter 11 case because the 1986 amendments were not yet adopted in the District of Arizona at the time the conversion order was entered. 71 B.R. at 779.

*Cypress Fin. Trading Co. v. Kelley (In re Cypress Fin. Trading Co.)*, 620 Fed. Appx. 287 (5th Cir. 2015) (dismissing chapter 7 case where there was no bankruptcy purpose). The decision whether to dismiss a case lies within the court's sound discretion. *See Jakovljevic-Ostojic*, 517 B.R. at 126; *Wilson*, 2016 WL 1254637 *5; *McCullough*, 229 B.R. at 376.

In considering whether dismissal is appropriate, the Court considers the impact that dismissal will have upon the creditors, the estate, and the debtor.[19] *See McCullough*, 229 B.R. at 376 ("The key decision . . . is whether dismissal is in the best interests of the creditors and the debtor."); *accord Murray*, 900 F.3d at 58 ("[C]reditors are not prejudiced by dismissal when they may exercise their rights outside of bankruptcy.")

This Bankruptcy Case serves no legitimate bankruptcy purpose. The Suspension Order was modified two and a half years ago to allow the Trustee to administer and liquidate the estate. As it currently stands, there are no assets available for liquidation and/or distribution to creditors. Recently, two years after the Suspension Order was modified, the Trustee filed an application to employ (the "Application to Employ") Mr. Rullan's counsel as special counsel in the Bankruptcy Case to investigate and prosecute potential turnover and avoidance actions. [ECF No. 406]. The Application to Employ largely repeats the claims Mr. Rullan has made in this and other

---

[19] Mr. Rullan appears to assert that a Court cannot dismiss a Chapter 7 case upon a debtor's motion absent the affirmative consent of all creditors. *See* Rullan Response at p. 3. Mr. Rullan's position is not only irrelevant, because the case is being dismissed not upon Ms. Goden's motion but as a result of the Court's OSC, it is incorrect. Bankruptcy Courts can, and do, grant debtor's motions to dismiss their chapter 7 cases over the objection of creditors. *See, e.g., Holmes*, 2021 WL 3834168 *2-3. In *Holmes*, a case that is factually similar to this case, the Court granted the debtor's motion to dismiss her chapter 7 case, over the objection of a creditor "HSB". *See id.* HSB objected to the dismissal because it wanted the trustee to continue administration of the estate to allow for the distribution on HSB's claims against the debtor – claims that were proceeding in litigation before state court. *See id.* The court noted that there was litigation pending in multiple forums, that would likely consume much of the value of the bankruptcy estate, that little progress had been made in such litigation, and the bankruptcy case was a two-party dispute between the debtor and HSB. *See id.*

proceedings, that are already the subject of the Fraudulent Conveyance Action and/or the 2012 Litigation.[20]

The 2012 Litigation has been pending for nearly 10 years.  The parties have reported to this Court that they are uncertain about the exact status of the 2012 Litigation and believe that it may somehow be stayed, formally or informally.  Mr. Rullan admittedly has used this Bankruptcy Case as a vehicle to conduct discovery to explore issues pertinent to the 2012 Litigation.  Ms. Goden has used the Bankruptcy Case to delay prosecution of the 2012 Litigation, both as a result of her initial filing, and also by seeking to stay the 2012 Litigation.  According to Mr. Rullan's counsel, because of the duplication of proceedings before the Bankruptcy Court and the District Court, one reason the District Court litigation has gone on for so long is because "the Debtor and her codefendants have been very successful at playing ping-pong.  We'll get things done in one court and then we'll get a stay.  And then we'll get a stay in the other court."  January Transcr. at 43:24-44:4.

Certain indicia of a bad faith filing are present here.  Ms. Goden filed the case on the eve of her scheduled deposition in the 2012 Litigation.  Four days later, she filed actions in the Baltimore County Circuit Court seeking to dissolve YWL and YWI – entities in which Mr. Rullan claims an interest in the pending 2012 Litigation.[21]  Ms. Goden's disclosures contained in her Schedules and Statement of Financial Affairs are not complete, nor accurate.  For example, Ms. Goden failed to disclose her interests in YWL in her Schedules, despite having sworn under penalty of perjury that she had a 50% interest in YWL in the dissolution action filed in the Baltimore County Circuit Court a few days after the Petition Date.  *Compare* Schedules and Statement of

---

[20] Given the long-standing adversarial relationship between Mr. Rullan and Ms. Goden, and the scorched-earth litigation tactics used by both sides, the Court has concerns regarding whether the empowerment of Mr. Choharis to act as special counsel for the Trustee is an appropriate choice.  Those concerns do not need to be addressed here.
[21] Case Nos. 03-C-14-008891 and 03-C-14-008892 filed in the Circuit Court for Baltimore County, Maryland.

Financial Affairs [ECF No. 17], *with* Dissolution Complaint, [ECF No. 259-11]. Ms. Goden also has used rental proceeds for living expenses and property repairs, in violation of the order authorizing such rental, which required proceeds to be applied to the mortgage payment. *Compare* Consent Order Authorizing Rental of 3204 Marnat Rd. [ECF No. 170], *with* Debtor's Accounting of Rents, [ECF No. 416].

The interests of the creditors, the debtor, and the estate are better served by dismissal.[22] Upon dismissal, the automatic stay will no longer be in effect, and creditors will be free to pursue collection efforts against their collateral and Ms. Goden in accordance with any governing agreements and applicable non-bankruptcy law. Although the Trustee may believe that secured creditors would receive greater proceeds from the disposition of their collateral through a private sale by the Trustee, rather than a foreclosure action, it is not clear to this Court that the Trustee's position is accurate. In this instance, it is unlikely that a trustee could sell the collateral of a secured creditor absent the secured creditor's consent, because the record indicates that the property is worth less than the indebtedness owed. And, even if the secured creditor consented to the sale, portions of the proceeds would go to paying the Trustee's commission, the real estate broker's commission, and other costs related to the sale, before the creditor would receive any payment. Moreover, no bankruptcy purpose is served in the Trustee expending time and resources to sell property, where all proceeds above the costs of such sale will redound to the benefit of the secured creditor and provide no benefit to the estate generally.[23]

---

[22] Ms. Goden supports dismissal of the Bankruptcy Case.

[23] Mr. Rullan speculates that perhaps the secured creditors would agree to a carve-out of a portion of the proceeds to allow for a distribution to unsecured creditors. This Court cannot recall a time when a bank has agreed to this type of carve-out without receiving some identifiable benefit in return. In any event, this carve-out is purely speculative.

Mr. Rullan has adequate remedies outside of the bankruptcy process.  With respect to Mr. Rullan, the only matters remaining open before the Bankruptcy Court are (1) his Proof of Claim, which is predicated upon him obtaining judgment in the 2012 Litigation and (2) his request for a denial of discharge/dischargeability pending in the Adversary Proceeding, which becomes moot upon the dismissal of this Bankruptcy Case.  Although Mr. Rullan would like the Bankruptcy Case to remain open, there is little that a trustee can do in this case that Mr. Rullan could not pursue himself in connection with the pending District Court litigation.  No bankruptcy purpose is served by such continued administration.  *See Holmes*, 2021 WL 3834168 *2.  Mr. Rullan has adequate remedies in the pending non-bankruptcy actions, and will not be prejudiced by the dismissal of this case.  *See Murray*, 900 F.3d at 61 (dismissing an involuntary proceeding where the creditor had adequate remedies under applicable non-bankruptcy law); *In re Van Owen Car Wash, Inc.*, 82 B.R. 671, 673 (Bankr. C.D. Cal. 1988) ("The bankruptcy court 'was not intended as a forum for private disputes that only involve the disputants for which there is a well-established albert less expeditious forum.'") (cleaned up).

Dismissal will also result in the more efficient resolution of the claims between Mr. Rullan and Ms. Goden.  The parties will no longer be able to delay resolution by "ping ponging" between the courts.  Removing one arena for litigation will save time and expense.  Judicial economy is also best served by dismissal.  The substantive claims are being litigated before the District Court.

## CONCLUSION

Wherefore, based upon the foregoing, it is, by the United States Bankruptcy Court for the District of Maryland, at Baltimore, hereby

**ORDERED**, that the Bankruptcy Case, and the related Adversary Proceeding, are dismissed.

cc: All Parties

###END OF ORDER###